UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

In the Matter of
TWO-J RANCH, INC., et al          CIVIL ACTION NO. 04-1891
                                          C/W    04-2457

                                U.S. DISTRICT JUDGE DEE D. DRELL

                                U.S. MAGISTRATE JUDGE JAMES D. KIRK


REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment filed by Luhr Bros., Inc. (Luhr), **doc. # 68**, referred to me by the district judge for report and recommendation.

These consolidated cases are limitation of liability actions filed pursuant to this court's admiralty jurisdiction by the bareboat[1] charterers of two vessels in navigation, Luhr and Two-J Ranch, Inc. (Two-J) and its related "sister" company, Vidalia Dock & Storage, Co. (VD&S).

The actions arise from an accident on November 7, 2001, when a welder, James King (King) employed by VD&S and working temporarily on a barge, Barge GD941, chartered to Luhr and loaded with "AgLime", a powdered limestone substance, fell overboard into the Mississippi River and drowned. King's surviving spouse, Carol King (plaintiff) filed suit in Louisiana state court against her husband's employer, VD&S, alleging negligence, unseaworthiness as

---

[1] A charter of a non-crewed vessel.

to Two-J's M/V Carla J. (a tow or tug boat to which barge GD-941 was "made up" or attached to at the time of the accident)  and that her husband was a Jones Act seaman under 46 U.S.C. §688, et seq. Plaintiff later joined Luhr as a party defendant in the state court suit, alleging that Luhr improperly loaded the barge, which caused King's death.

Luhr, Two-J and VD&S filed limitation of liability[2] suits in this court which are consolidated in this action. Luhr, Two-J and VD&S then filed cross-claims against each other alleging entitlement to indemnity or, in the alternative, contribution and attorney fees from the other. Under the Act, the state court suit was ordered stayed. VD&S later filed a third party complaint against Tower Rock Stone Company (Tower), a company related to Luhr, alleging that in fact it was Tower, and not Luhr, which had loaded the barge  alleged to have caused King's death.

Luhr now seeks summary judgment asserting that it did not load the barge and that its tow vessel was many miles away when plaintiff fell overboard. Two-J, VD&S and Tower have all filed similar motions and plaintiff has filed a motion to dismiss the cross-claims for indemnity filed by Luhr and VD&S and seeks to have the stay lifted as to her state court suit. Those motions are also referred to the undersigned for report and recommendation and separate opinions will be issued.

---

[2] Limitation of Liability Act, 46 U.S.C.App. §181 *et seq.*

2

<u>Facts</u>

Prior to the date of the accident, Terral RiverService, Inc. (Terral), who is not a party, ordered a barge-load of AgLime from Tower  to be delivered to the dock facilities of VD&S in Vidalia, Louisiana. Terral hired Luhr to tow the barge and Luhr bareboat chartered the barge. In its motion, Luhr alleges that it had been delivering barges loaded with AgLime to VD&S for Terral for many years.

On  November 1, 2001, Tower loaded Barge GD941 at its Missouri facility and Luhr's M/V Alois Luhr towed the barge south, down the Mississippi to a point near VD&S's dock. VD&S's vessel, the M/V Bettye M. Jenkins, which VD&S had bareboat chartered from its sister company, Two-J, met the barge and removed it from the Luhr tow-boat and placed it in VD&S's fleet. The M/V Alois Luhr then proceeded down-river with its remaining 22 barges in tow.

The accident occurred on November 7, 2007, some 15 hours after the Luhr had relinquished control of the barge to plaintiff's employer, VD&S, and at a time the barge was "made up" to, or attached, to VD&S's CM/V Carla J. It was almost three years later when Luhr received the lawsuit that it learned of the accident.

King was employed as a welder for VD&S and worked at his employer's drydock facility at Vidalia. Sometimes King would be asked by VD&S to serve as a crew member on one of its tow vessels. On the day of the accident, King was asked to go aboard the loaded

barge and ready it for moving. King, who could not swim and who placed a PFD[3] loosely about him, walked along the edge of the barge and is alleged to have slipped on the powdered AgLime into the river. Rescue efforts by a co-worker were unsuccessful.

Plaintiff alleges that Luhr is at fault because of an "unseaworthy" barge and was negligent in the loading of the barge and in allowing the AgLime to remain on the walkways of the barge. Luhr argues in its motion that discovery has proven that it did not load the barge –Tower did– and, in any event, it owed to plaintiff no duty of seaworthiness nor any duty under general maritime law.

<u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest

---

[3] A PDF is a "positive floatation device."

4

upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried. Since plaintiff has not attempted to controvert any of the specific facts stated in the defendant's statement of undisputed facts, those facts will be deemed admitted for purposes of this motion.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 at 2552; International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc., 812

F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the nonmovant's case. Little v. Liquid Air Corporation, 37 F.3d 1069, (5th Cir. 1994).  Once this burden has been met, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Izen v. Catalina 382 F.3d 566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Little, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, id.

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Celotex at 2553.

## Analysis

Luhr has shown that discovery proves that Luhr did not load the barge. However, plaintiff opposes Luhr's motion by asserting that because Luhr and Tower are both owned by the Luhr family and share the same "executives" and offices, knowledge by Tower that the barge was loaded improperly is knowledge by Luhr and, given that knowledge, Luhr, as towing company, should have done something about it. Plaintiff claims the barge was loaded improperly in that it was loaded from one side to the other with AgLime, allowing no room to walk. That issue is disputed by other parties who suggest that this barge did not have walkways and that plaintiff was trained to walk over the top of the AgLime, not along the edge of the barge, in order to avoid just this sort of accident.

1) <u>Unseaworthiness</u>.

A vessel and its operator have a duty to members of the crew of the vessel to provide a seaworthy vessel, that is one fit for its intended use. Where, as here, the vessel–in this case the barge[4]–is under a bareboat or demise charter, the charterer, here Luhr, is the operator and is the owner *pro hac vice*, thus owing the duty of seaworthiness to the vessel's crew.

It is undisputed that the barge at issue  had no crew. However, the duty of seaworthiness has been extended to certain

---

[4]  See <u>Stewart v. Dutra Construction Co.</u>, 125 S. Ct. 1118 (2005); <u>Holmes v. Atlantic Sounding Company, Inc.</u>, 437 F.3d 441 (5th Cir. 2006).

persons who are not seamen but who are doing a seaman's work. <u>Seas Shipping v. Sieracki</u>, 66 S.Ct.872 (1946).   Such persons have traditionally been referred to as "Sieracki seamen".[5]

In her claims against the defendants in this case, plaintiff asserts, however, that King was a seaman, i.e. a member of a crew of another vessel, and as such entitled to the protections and benefits afforded seamen by the Jones Act.   Accepting that allegation as true, Luhr points out that the Fifth Circuit has refused to extend Sieracki seaman status to Jones Act seamen who are injured on a vessel of which he is not a member of the crew. <u>Smith v. Harbor Towing & Fleeting, Inc.</u>, 910 F.2d 312 (5th Cir. 1990). Thus the warranty of seaworthiness is not owed. Plaintiff acknowledges this 5th Circuit precedent is controlling in this case, but, apparently in hopes the rule will be changed, asserts that she does not waive the right to pursue her unseaworthiness claim.

Here, because King was not a member of the crew of the vessel-the barge-plaintiff may not maintain an unseaworthiness claim against the vessel's operator, Luhr.

------

[5] The advantage of achieving Sieracki seamen status has been, for the most part, eliminated by amendments to the Longshore and Harborworkers' Compensation Act (LSHWCA) 33 U.S.C. §901 *et seq*,  However, there are a few situations in which a plaintiff might still qualify for, and benefit from Sieracki seaman status. Perhaps the most obvious is where the seaman pursuing an unseaworthiness claim is a member of the crew of the vessel on which he is injured (thus <u>Smith</u> does not apply to prevent recovery) and is not employed by the owner of the vessel (and thus the Jones Act would not apply). See also <u>Aparicio v. Swan Lake</u>, 643 F.2d 1109 (5th Cir. Unit A. Apr. 1981) and <u>Cormier v. Oceanic Contractors, Inc</u>., 696 F.2d 1112, 1113 (5th Cir. 1983), cert. den., 104 S.Ct. 85.

2. <u>Negligence under general maritime law</u>.

Plaintiff claims Luhr was negligent in loading the barge with AgLime and, in so doing, covering what she claims were walkways and by failing to correct the situation which it either knew about or, because of its interlocking relationship with Tower, should be deemed to have known about.

Luhr argues that it owed no duty to King and, in any event, breached no duty.

A vessel owner's duty to a maritime worker[6] is set forth in <u>Scindia Steam Navigation Company, Ltd. v. De Los Santos</u>, 101 S.Ct. 1614 (1981) as the duty to use reasonable or ordinary care to have the vessel and its equipment in good condition such that a worker aboard the vessel will be able to use reasonable care to carry on its cargo operations with reasonable safety. The duty includes warning such persons of hazards on the vessel of which it knows or should know and that are not known or obvious to a person reasonably competent in his work. In addition, a vessel owner may be liable if it involves itself in the operations of the stevedore or if it fails to intervene to correct a dangerous situation which the stevedore fails to correct. Otherwise, the vessel owner may rely on the expertise of the stevedore.

---

[6] For the purposes of this analysis, it makes no difference whether King is a seaman or a longshoreman or other maritime worker. As discussed above, even if a seaman, Luhr would not owe him a duty of seaworthiness and because Luhr is not his employer, King would have no Jones Act action against Luhr. The remaining claim would necessarily be one for negligence under general maritime law.

In this case Luhr did not involve itself in the operations of VD&S in preparing to unload the barge. Neither was Luhr present when the operation was conducted and thus had no opportunity or need to intervene to prevent a dangerous situation arising during the unloading process, including the readying of the barge for unloading. Further, King's employer had a statutory duty under the LSHWCA to provide King with a safe place to work but Luhr did not. Rather, Luhr's duty was one of reasonable care, as discussed above.

Much of the argument of counsel concerns the alleged fault of King in various respects including his failure to properly use his PFD and his failure to abide by his employer's rules not to walk along the edge of the barge. However, what matters is whether the claimed dangerous condition was open and obvious such that no duty was owed to King by Luhr to warn King of the danger. <u>Scindia</u>, supra.

In this case, the evidence submitted to the court, regarding which there is no real dispute, shows the product loaded on the barge "rail to rail". However, whether the barge should have been or should not have been loaded in that manner is irrelevant to the <u>Scindia</u> analysis; instead, what matters is whether the condition was one which King should have recognized as a danger. I find it was.

Not only was the location of the AgLime on the barge open and obvious for anyone to see, the evidence shows that plaintiff had

10

been trained with regard to the dangers of walking along the edges of the barge in such circumstances. He had been trained to walk over, not along the edge of, the load.

It is important to note that this is not a finding of comparative fault on the part of King, but simply a recognition, for the purposes of determining whether there was a duty, of the reasons why the condition should have been obvious to King under the Supreme Court's <u>Scindia</u> analysis. Regardless whether the loading of the barge created a hazard, the condition was obvious and thus no duty to warn was owed King by Luhr.

Finally, I find that Luhr had no duty to change the position of the cargo to eliminate what plaintiff alleges was a hazard. Plaintiff has pointed to no authority imposing such a duty and I have found none. Luhr's duty, as explained by <u>Scindia</u>, was to maintain the barge and its equipment in good condition and to warn of dangers that are not obvious to a trained worker.

Luhr did not breach its duty of reasonable care owed to King.

For the foregoing reasons, IT IS RECOMMENDED that the motion for summary judgment, doc. # 68, be GRANTED and that the claims against Luhr be dismissed.

## **OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written

objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 12th day of September, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

12