UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

In the Matter of
TWO-J RANCH, INC., et al

CIVIL ACTION NO. 04-1891
C/W 04-2457

U.S. DISTRICT JUDGE DEE D. DRELL

U.S. MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment filed by Tower Rock Stone Company (Tower), **doc. # 103**, referred to me by the district judge for report and recommendation.

These consolidated cases are limitation of liability actions filed pursuant to this court's admiralty jurisdiction by the bareboat[1] charterers of two vessels in navigation, Luhr and Two-J Ranch, Inc. and its related "sister" company, Vidalia Dock & Storage, Co.

The actions arise from an accident on November 7, 2001, when a welder, James King (King) employed by VD&S and working temporarily on a barge, Barge GD941, chartered to Luhr and loaded with "AgLime", a powdered limestone substance, fell overboard into the Mississippi river and drowned. King's surviving spouse, Carol King (plaintiff) filed suit in Louisiana state court against her husband's employer, VD&S, alleging negligence, unseaworthiness as

[1] A charter of an non-crewed vessel.

to Two-J's M/V Carla J. (a tow or tug boat to which barge GD-941 was "made up" or attached to at the time of the accident) and that her husband was a Jones Act seaman under 46 U.S.C. §688, et seq. Plaintiff later joined Luhr as a party defendant in the state court suit, alleging that Luhr improperly loaded the barge, which caused King's death.

Luhr, Two-J and VD&S filed limitation of liability[2] suits in this court which are consolidated in this action. Luhr, Two-J and VD&S then filed cross-claims against each other alleging entitlement to indemnity or, in the alternative, contribution and attorney fees from the other. Under the Act, the state court suit was ordered stayed. VD&S and Two-J later filed a third party complaint against Tower Rock Stone Company (Tower), a company related to Luhr, alleging that in fact it was Tower, and not Luhr, which had loaded the barge alleged to have caused King's death.

Tower now seeks summary judgment asserting that the claims against it are prescribed, that it owed no duty to King and that claims for indemnity and contribution against it do not lie. Luhr, VD&S and Two-J have filed similar motions and plaintiff has filed a motion to dismiss the cross-claims for indemnity filed by Luhr, Two-J, and VD&S and seeks to have the stay lifted as to her state court suit. Those motions are also referred to the undersigned for report and recommendation and separate opinions will be issued.

---

[2] Limitation of Liability Act, 46 U.S.C.App. §181 *et seq*.

Facts

Prior to the date of the accident, Terral RiverService, Inc. (Terral), who is not a party, ordered a barge-load of AgLime from Tower to be delivered to the dock facilities of VD&S in Vidalia, Louisiana. Terral hired Luhr to tow the barge and Luhr bareboat chartered the barge. In its motion, Luhr alleges that it had been delivering barges loaded with AgLime to VD&S for Terral for many years.

On November 1, 2001, Tower loaded Barge GD941 at its Missouri facility and Luhr's M/V Alois Luhr towed the barge south, down the Mississippi to a point near VD&S's dock. VD&S's vessel, the M/V Bettye M. Jenkins, which VD&S had bareboat chartered from its sister company, Two-J, met the barge and removed it from the Luhr tow-boat and placed it in VD&S's fleet. The M/V Alois Luhr then proceeded down-river with its remaining 22 barges in tow.

The accident occurred on November 7, 2007, some 15 hours after the Luhr had relinquished control of the barge to plaintiff's employer, VD&S, and at a time the barge was "made up" to, or attached to VD&S's M/V Carla J. It was almost three years later when Luhr received the lawsuit that it learned of the accident.

King was employed as a welder for VD&S and worked at his employer's facility at Vidalia, a facility primarily made up of a floating dry-dock, and an attached work barge. Sometimes King would be asked by VD&S to serve as a crew member on one of its three tow

vessels. On the day of the accident, King was asked to go aboard the loaded barge and ready it for moving. King, who could not swim and who placed a PFD[3] loosely about him, walked along the edge of the barge and is alleged to have slipped on the powdered AgLime into the river. Rescue efforts by a co-worker were unsuccessful.

<u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so

[3] A PFD is a "positive floatation device".

respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried. Since plaintiff has not attempted to controvert any of the specific facts stated in the defendant's statement of undisputed facts, those facts will be deemed admitted for purposes of this motion.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 at 2552; International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc., 812 F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the nonmovant's case. Little v. Liquid Air Corporation, 37 F.3d 1069, (5th Cir. 1994). Once this burden has been met, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Izen v. Catalina 382 F.3d

566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Little, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, id.

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Celotex at 2553.

## Analysis

1) Prescription

The accident occurred on November 7, 2001. Suit was filed by King's widow, plaintiff, on June 22, 2004 in state court. Plaintiff did not sue Tower and has never added Tower as a defendant. However, VD&S and Two-J filed a third party demand against Tower on

May 4, 2005 under FRCP 14(a). VD&S and Two-J also tendered Tower to plaintiff under FRCP14(c).

Tower argues that the claims against it are prescribed because they were not filed within three years of the accident. VD&S, Two-J and plaintiff argue that the third party demand relates back under FRCP 15©.

A Jones Act claim and a general maritime tort claim must both be filed within three (3) years of the date the cause of action accrued. 45 U.S.C. 56; 46 U.S.C. 30106. State law interruption is not permitted as to a Jones Act claim. See Burnett v. New York Central R.R. Co., 85 S.Ct. 1050 (1965) (interpreting FELA and concluding that need for uniformity prevents application of local rules regarding interruption). I find the same policy considerations are applicable to prescription as to maritime torts under 46 U.S.C. 30106. Therefore, a plaintiff must sue within three years of the date of the accident.

VD&S, Two-J and plaintiff argue, however, that Tower, an interlocking company with Luhr, had notice of the claim within the prescriptive period, share an "identity of interest" and therefore, under FRCP 15(c) , the third party demand relates back to the date of filing against Luhr. They argue that, but for a mistake in identity, suit would have been filed against Tower.

FRCP 15 (c) applies to relation back of amendments to pleadings and is not applicable to a late-filed third party demand.

Here, there was no amendment of pleadings filed, only a new third party demand against a new party. In addition, and in any event, Rule 15 (c) requires that there be a mistake regarding the identity of the correct party. Here, as Tower points out in brief, there was no mistake as to the correct party. Instead, Tower was not named due to a lack of knowledge as to its identity, not due to a mistake concerning its name. See Durgin v. Crescent Towing & Salvage, Inc. 2002 U.S.Dist. LEXIS 14330, (D. La. 2002); Jacobsen v. Osborne, 133 F.3d 315 (5th Cir. 1998). In this case, Tower's involvement was not known until revealed in discovery. When Tower was added by VD&S and Two-J, the claims against Luhr were not dismissed nor was Tower substituted as a party for Luhr. Rule 15 (c) is inapplicable to this third party demand.

While it is clear from the above discussion that, had plaintiff sued Tower more than three years after the date of the accident, the claims would have been prescribed, the issue in this motion is whether the claims by third party plaintiffs are prescribed.

VD&S and Two-J filed claims under FRCP 14(a) and (c). Its claim under Rule 14(a) is one for indemnity and contribution and under 14(c), for judgment against Tower in favor of plaintiff. The tender of Tower to plaintiff under Rule 14(c) , is a request for "judgment against the third-party defendant in favor of plaintiff". Therefore, the Rule 14(c) claim should be governed by the same

rule, discussed above, applicable to a claim by plaintiff. See Durgin v. Crescent Towing & Salvage, Inc., 2002 U.S. Dist. LEXIS 14330, (D.La. 2002); Cavanaugh v. The Lenco II, 102 F. Supp. 213 (D.C. N. Y. 1951). However, the claim for indemnity and contribution is governed by a different rule. In the Fifth Circuit, general maritime claims for indemnity and contribution do not accrue until the principal defendant is cast in judgment on the principal demand. Marathon Pipe Line Company v. Drilling Rig Rowan/Odessa, et al., 761 F.2d 229 (5th Cir. 1985).[4]

Therefore, the Rule 14(a) claims against Tower for indemnity or contribution are not prescribed.

B. Duty to King.

Next, Tower argues that, as the entity that sold the AgLime and that loaded Luhr's barge, it owed no duty to King. Tower correctly suggests that, in order to establish negligence under maritime law, a plaintiff must prove (1) the existence of a duty, (2) a breach of that duty, (3) damages, and (4) a proximate causal relationship between the breach of duty and the damages. Lloyd's Leasing, Ltd. v. Conoco, 868 F.2d 1447, 1449 (5th Cir. 1989).

Although Tower couches its argument in terms of duty, it argues that the evidence shows it was not negligent, citing principally, its expert's report. In addition, Tower points to

---

[4] Compare, as to Texas law, Koonce v. Quaker Safety Products and Manufacturing Company, 798 F.2d 700 (5th Cir. 1986).

evidence of industry practices and eye witness testimony as to whether the barge was improperly loaded, as well as evidence of King's own fault. Plaintiff, in briefing this and other motions, has pointed to evidence and testimony that the barge was loaded improperly. Suffice it to say that, based on the voluminous evidence before the court, there exist genuine issues of material fact as to whether the barge was loaded properly or not.

c) Indemnity and Contribution

Tower suggests that under the Fifth Circuit's holding in Hardy v. Gulf Oil Corporation, 949 F.2d 826 (5th Cir. 1992), there are only limited claims for indemnity which still remain viable. Tower then analyses various scenarios and possibilities of theories of recovery in this case, including, for example, whether plaintiff is found to be a seaman or not a seaman, whether the Ryan doctrine[5] may apply, and whether unseaworthiness may exist. Tower then concludes that "no indemnity could conceivably be owed by Tower Rock".

The court is not convinced that Tower has explored and considered every possible combination of findings that could affect whether or not indemnity may be owed in this case. What is clear is that there remain genuine issues of material fact as to the potential liabilities of the parties in this action. The court is

---

[5] See Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation, 76 S.Ct. 232 (1956).

not prepared to dismiss Tower based upon the claimed theoretical impossibility of an indemnity claim lying against it.

Similarly, Tower cites Simeon v. T. Smith and Son, Inc., 852 F.2d 1421, 1433 (5th Cir. 1988) and suggests that contribution against it cannot lie. Once again, the court cannot resolve these controverted issues of fact now. Rather, VD&S and Two-J, as potential joint tortfeasors, are entitled to maintain and preserve their claims for indemnity and contribution pending resolution of the issues in this case.

For the foregoing reasons, IT IS RECOMMENDED that the motion for summary judgment, doc. # 103, be GRANTED as to the Rule 14(c) claims but DENIED as to the claims for indemnity and contribution.

**OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN**

**TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 12th day of September, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE