UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

In the Matter of
TWO-J RANCH, INC., et al    CIVIL ACTION NO. 04-1891
                                    C/W    04-2457

                            U.S. DISTRICT JUDGE DEE D. DRELL

                            U.S. MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment filed by Two-J Ranch, Inc. and Vidalia Dock & Storage Company (collectively, Two-J), **doc. # 106,** referred to me by the district judge for report and recommendation.

These consolidated cases are limitation of liability actions filed pursuant to this court's admiralty jurisdiction by the bareboat[1] charterers of two vessels in navigation, Luhr and Two-J Ranch, Inc. and its related "sister" company, Vidalia Dock & Storage, Co.

The actions arise from an accident on November 7, 2001, when a welder, James King (King) employed by VD&S and working temporarily on a barge, Barge GD941, chartered to Luhr and loaded with "AgLime", a powdered limestone substance fell overboard into the Mississippi river and drowned. King's surviving spouse, Carol King (plaintiff) filed suit in Louisiana state court against her

---

[1] A charter of an non-crewed vessel.

husband's employer, VD&S, alleging negligence, unseaworthiness as to Two-J's M/V Carla J. (a tow or tug boat to which barge GD-941 was "made up" or attached to at the time of the accident) and that her husband was a Jones Act seaman under 46 U.S.C. §688, et seq. Plaintiff later joined Luhr as a party defendant in the state court suit, alleging that Luhr improperly loaded the barge, which caused King's death.

Luhr, Two-J and VD&S filed limitation of liability[2] suits in this court which are consolidated in this action. Luhr and VD&S then filed cross-claims against each other alleging entitlement to indemnity or, in the alternative, contribution and attorney fees from the other. Under the Act, the state court suit was ordered stayed. VD&S later filed a third party complaint against Tower Rock Stone Company (Tower), a company related to Luhr, alleging that in fact it was Tower, and not Luhr, which had loaded the barge alleged to have caused King's death.

Two-J and VD&S now seek summary judgment asserting that plaintiff, its employee, was not a seaman and therefore may not assert a Jones Act claim against it and that no unseaworthiness claim lies. Luhr and Tower have filed similar motions and plaintiff has filed a motion to dismiss the cross-claims for indemnity filed by Luhr, Two-J, and VD&S and seeks to have the stay lifted as to her state court suit. Those motions are also referred to the

---

[2] Limitation of Liability Act, 46 U.S.C.App. §181 et seq.

undersigned for report and recommendation and separate opinions will be issued.

## Facts

Prior to the date of the accident, Terral RiverService, Inc. (Terral), who is not a party, ordered a barge-load of AgLime from Tower to be delivered to the dock facilities of VD&S in Vidalia, Louisiana. Terral hired Luhr to tow the barge and Luhr bareboat chartered the barge. In its motion, Luhr alleges that it had been delivering barges loaded with AgLime to VD&S for Terral for many years.

On November 1, 2001, Tower loaded Barge GD941 at its Missouri facility and Luhr's M/V Alois Luhr towed the barge south, down the Mississippi to a point near VD&S's dock. VD&S's vessel, the M/V Bettye M. Jenkins, which VD&S had bareboat chartered from its sister company, Two-J, met the barge and removed it from the Luhr tow-boat and placed it in VD&S's fleet. The M/V Alois Luhr then proceeded down-river with its remaining 22 barges in tow.

The accident occurred on November 7, 2007, some 15 hours after the Luhr had relinquished control of the barge to plaintiff's employer, VD&S and at a time the barge was "made up" to, or attached, to VD&S's M/V Carla J. It was almost three years later when Luhr received the lawsuit that it learned of the accident.

King was employed as a welder for VD&S and worked at his employer's facility at Vidalia, a facility primarily made up of a

floating dry-dock, and an attached work barge. Sometimes King would be asked by VD&S to serve as a crew member on one of its three tow vessels. On the day of the accident, King was asked to go aboard the loaded barge and ready it for moving. King, who could not swim and who placed a PFD loosely about him, walked along the edge of the barge and is alleged to have slipped on the powdered AgLime into the river. Rescue efforts by a co-worker were unsuccessful.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

>issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried. Since plaintiff has not attempted to controvert any of the specific facts stated in the defendant's statement of undisputed facts, those facts will be deemed admitted for purposes of this motion.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 at 2552; International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc., 812 F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the nonmovant's case. Little v. Liquid Air Corporation, 37 F.3d 1069, (5th Cir. 1994). Once this burden has been met, the non-moving party must come forward with "specific facts showing

5

that there is a genuine issue for trial." Izen v. Catalina 382 F.3d 566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Little, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, id.

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Celotex at 2553.

### Analysis

1) Jones Act claim.

The Jones Act provides a negligence remedy to seamen against their employer. A seaman is a member of a crew of a vessel.

The Supreme Court has held that, in order to qualify for

seaman status, the worker must contribute to the mission or work of the vessel and have a connection to the vessel which is substantial in duration and nature. Chandris v. Latsis, 115 S. Ct. 2172 (1995). The court held that a worker who spends less than about 30% of his time on a vessel (or fleet of vessels[3]) should not qualify as a seaman under the Jones Act.

In this case, Two-J argues that King was not a seaman and thus is not entitled to assert a Jones Act claim against it. In support of its motion, Two-J has attached various documents, to which plaintiff objects based on authenticity)including King's payroll records, and office logs. Those records show, by Two-J's computations, that King worked only 8.2% of his time as a deckhand on one of the tow boats. Two-J further shows that King was hired as welder to repair barges at the dry dock, and only occasionally worked as a temporary deckhand. Two-J points to the case of Nunez v. B & B Dredging, 288 F.3d 271 (5th Cir. 2002) where the court found that a worker who spends approximately 10% of his time on a vessel was not substantial and thus the worker did not qualify for seaman status.

Plaintiff and Luhr argue that Two-J's figures account only for the time King spent on the tow boats as deckhand, and do not account for the fact that, as a welder on the repair crew, he worked primarily on the floating dry-dock and its attached crane

---

[3] See Harbor Tug & Towing v. Papai, 117 S.Ct. 1535 (1997)

barge. They argue that both the dry dock and the crane barge are vessels and that, when the time King spent on them is included in the calculation, King easily surpasses the 30% threshold.

The issue of what is a vessel was dealt with definitively in <u>Stewart v. Dutra Construction Co.</u>, 125 S.Ct. 1118 (2005). In Stewart, Justice Thomas, writing for the majority, held that a "harbor dredge" was a vessel. He explained that prior cases had held barges to be vessels, including a stationary crane barge, floating platforms, a coal barge and a dredge. Importantly, the court distinguished two cases holding that a drydock and a wharfboat were not vessels, saying that those watercraft were not practically capable of being used to transport cargo or people from place to place. Both the drydock and the wharfboat, however, were "permanently moored", having a permanent location and, in the case of the wharfboat, having utilities run from the shore. Justice Thomas held that a watercraft is not capable of being used for maritime transport if it has been permanently moored or otherwise rendered incapable of transportation or movement. The court noted that even a semi-permanent or indefinite mooring is enough to defeat vessel status citing, in the case of a floating casino, this circuit's <u>Pavone v. Mississippi Riverboat Amusement Corp.</u>, 52 F.3d 560, 570 (5th Cir. 1995).

The court further explained that, although all that is required is that the watercraft be used or capable of being used as

a means of transportation over water, a structure may lose its character as a vessel if withdrawn from the water for extended periods of time. Ships do not remain vessels merely because of the remote possibility that they may one day sail again, the court held.

After Stewart, the 5th Circuit rendered a decision in Holmes v. Atlantic Sounding Company, Inc., 437 F.3d 441 (5th Cir. 2006). The court held that a 140 foot barge, "floating dormitory" and galley, used to house workers on a dredge, was a vessel for Jones Act purposes. The court noted that Stewart has greatly expanded the watercraft which are considered vessels. The court found that the barge was not inspected or registered with the coast guard and was not intended to transport people or equipment. It had no running lights or other navigational equipment, except a radio, but it did have life rings. It did however, have a raked bow and it was sometimes moored by anchors.

In the instant case, plaintiff argues that at least the "spud barge" which was cabled to the drydock, was a vessel under Stewart and Holmes. She suggests that, according to the testimony, the dry dock and the barge were towed up and down the river at Two-J's facility to accommodate varying water levels. Luhr argues that the drydock and barge at least transported equipment on the river. Luhr suggests that that shows the drydock is not permanently moored. Therefore, Luhr argues, both were "capable of maritime

9

transportation".

Two-J counters that when the dry dock and barge were moved, they were only moved a couple of feet in to the bank or a couple hundred feet up or down the river, and were always connected to the bank.

There is insufficient evidence before the court to determine whether the dry dock and spud barge, or either of them, are vessels. In addition, there is little evidence in the record as to the relative amount of time King might have spent on the drydock as opposed to the spud barge. This, of course matters even more if it is determined that one but not the other is a vessel. When this uncertainty is added to the plaintiff's testimony that when she would visit her husband for lunch at his jobsite, she always saw him on the boats "that were moving"[4], King's status is uncertain.

A genuine issue of material fact exists as to whether the drydock and barge are vessels and thus as to whether King was a seaman.

    2) <u>Unseaworthiness</u>.

A vessel and its operator have a duty to members of the crew of the vessel to provide a seaworthy vessel, that is, one fit for its intended use.

Two-J/VD&S correctly points out that the duty of providing a seaworthy vessel is the non-delegable duty of the vessel owner and

---

[4] Presumably she is referring to the tow or tug boats.

that, because Two-J was not the owner of the GD-941 barge chartered by Luhr from which King fell, it can have no liability to King for unseaworthiness. See <u>Bommarito v. Penrod Drilling Corp.</u>, 929 F.2d 186, 190 (5th Cir. 1991).

However, plaintiff points out that its unseaworthiness claim arises out of Two-J's operation of the M/V Carla J and the spud barge, not Luhr's GD-941. There is insufficient evidence before the court as to the issue as it regards the M/V Carla J. and the spud barge. In addition, whether King was a seaman at all is at issue. Therefore, the motion as to the claim of unseaworthiness should be denied.

### 2. <u>Non-pecuniary damages</u>.

Two-J/VD&S also argues in this motion for summary judgment that plaintiff, as a Jones act seaman, may not recover non-pecuniary damages based on unseaworthiness from his employer. However, because there are genuine issues of material fact as to King's seaman status and as to the duty regarding unseaworthiness owed by Two-J/VD&S, this issue should be pretermitted at this time and may be re-urged by motion to dismiss or, if appropriate, by summary judgment at the appropriate time.

For the foregoing reasons, IT IS RECOMMENDED that the motion for summary judgment, doc. # 106, be DENIED.

### **OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and

11

Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 12th day of September, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE